UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESHUA LION MYERS,

Plaintiff,

v.

NIAGARA COUNTY,
ANGELO NUNNARI,
SHERRY PROHASKA,

Defendants.

---

25-CV-6029-CJS

DECISION and ORDER

INTRODUCTION

*Pro se* plaintiff Jeshua Lion Myers commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the defendants violated his federal constitutional rights while he was confined at the Niagara County Jail, first as a pre-trial detainee and later as a convicted prisoner. Now before the Court is an unopposed motion by Defendants to dismiss the entire Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The application is granted in part and denied in part.

BACKGROUND

Unless otherwise noted the following facts are taken from the Complaint and assumed to be true for purposes of this Decision and Order. At all relevant times, between March 2024 to January 2025, Plaintiff, who was detained while being federally prosecuted in this Court, *see, U.S.A. v. Myers*, 1:24-CV-00126-JLS, was confined at the Niagara County Jail in Lockport, New York, pursuant to an agreement between the jail

and the United States Marshal for the Western District of New York. *See*, Revised Presentence Investigation Report, ECF No. 31 at pp. 2-3, 15, 17.

The docket sheet in the federal criminal action indicates that Plaintiff was taken into custody on March 27, 2024; pled guilty on October 15, 2024; and was sentenced on May 2, 2025. Therefore, for purposes of evaluating Plaintiff's legal status at the time of the alleged constitutional violations, it appears that, regarding his conditions of confinement claims, prior to his plea on October 15, 2024, he was a pretrial detainee, and after his plea, and until he filed this action on January 13, 2025, he was a convicted prisoner, since a "convicted" inmate includes an inmate who has pled guilty, but has not been sentenced. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979) (noting that an inmate is considered convicted once the "State has complied with the constitutional guarantees traditionally associated with criminal prosecutions" and "has secured a formal adjudication of guilt")).

Plaintiff filed this action along with an application for leave to proceed *in forma pauperis*. The Court granted that application, screened Plaintiff's Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a)-(b), dismissed certain claims without leave to amend, and gave Plaintiff an opportunity to amend certain claims, which he declined. The following claims now remain: 1) a claim that the jail's cooks, Angelo Nunnari ("Angelo") and Sherry Prohaska ("Sherry"), subjected Plaintiff to unreasonably dangerous conditions of confinement by serving him contaminated food from an unsanitary kitchen, in violation

of his rights under the Eighth and Fourteenth Amendments; 2) a *Monell* claim that Niagara County subjected Plaintiff to unreasonably dangerous conditions of confinement due to contaminated food and unsanitary conditions in the jail's kitchen and living areas, in violation of his rights under the Eighth and Fourteenth Amendments; and 3) a *Monell* claim that Niagara County prevented Plaintiff from freely exercising his religion by forcing him to choose between attending religious services and attending recreation, in violation of his rights under the First Amendment.[1]

Regarding Plaintiff's first claim above, the Complaint alleges that Angelo and Sherry served him food that was spoiled and moldy, and which sometimes contained hair and rat feces. Plaintiff, who briefly worked in the jail kitchen, further contends that the kitchen was unsanitary since surfaces were covered in mold; dust and debris from a nearby construction project was permitted to contaminate the food; dirty water from air vents and a refrigeration unit was allowed to drip onto food;[2] carts used to deliver food trays were also used to transport garbage; beverage containers were not cleaned with soap; kitchen "rags were all dirty and smelled"; and inmate workers served food without hair nets, gloves, or access to hand soap. The Complaint alleges that Angelo and Sherry were aware of the unsanitary conditions, since Plaintiff and other inmates complained about them.[3] The pleading alleges, however, that Angelo and Sherry attempted to punish

---

[1] Plaintiff did not file an amended complaint by the court-imposed deadline, and, consequently, only these claims remain.

[2] *See*, Complaint, ECF No. 1 at p. 16 ("In one of the freezers there was an AC system that leaked with a tray under it that said Toxic Water. Underneath this AC system on a stand is where they stored left-over food wrapped in S[a]ran warp. You could see dark brown liquid dripping from AC onto food.").

[3] *See*, Complaint, ECF No. 1 at pp. 10-11 ("Angelo is the head cook at [the jail.] [H]e has failed to enforce health practices such as wearing hair nets, having soap available on a daily basis for inmate workers, clean rags to clean with. He has served moldy, weeks old, spoiled food numerous times. Angelo uses his position of power and influence with the classification officer (Mr. Savino) to punish any

inmates who complained about conditions in the kitchen. The Complaint further contends that both Angelo and Sherry personally served spoiled food to inmates and that Sherry specifically directed inmates working in the kitchen to serve food after they informed her that it was spoiled.

Plaintiff's second claim purports to state a *Monell* conditions-of-confinement claim against Niagara County based on the unsanitary kitchen conditions described above, as well as on conditions in the living quarters where Plaintiff was housed. Regarding conditions in the living quarters, the Complaint indicates that air vents were caked with dust and dirt, that canine puppies kept in "Pod 4" of the jail, where Plaintiff resided for part of the relevant period,[4] urinated and defecated on floors in Pod 4, and that the only brooms and mops available in Pod 4 to clean Plaintiff's living area were contaminated with dog urine and feces.[5] The Complaint asserts that the alleged unconstitutional conditions in the kitchen and living quarters existed pursuant to county policy, since the conditions persisted after Plaintiff and other inmates complained about them orally and in writing via the jail grievance system. In particular, attached to the Complaint are copies of two jail grievances, 24-895 and 24-893, both written by Plaintiff on November 20, 2024. The first states: "Would appreciate the kitchen staff to stop serving moldy, spoiled food

---

inmate who speaks up about what goes on in the kitchen. . . . Sherry is a cook at the [jail]. She uses her position of power to threaten inmates with the [loss] of their kitchen job and being sent to the blocks. She has knowingly served moldy food to Niagara County inmates.").

[4] *See*, Complaint, ECF No. 1 at p. 14 (Indicating that Plaintiff was moved from Pod 4 to Pod 3.).

[5] *See*, Complaint, ECF No. 1at p. 9 ("[T]he same mop and broom we are suppose to clean [our] room with [are] use[d] to mop up dog feces and urine. The broom is used to sweep up the area where they mostly urinate and spread feces. The rec yard is where the dogs mostly use the bathroom because most staff are too lazy to take them out[side]. These dogs urinate and spread feces in [our] eating areas, rec yard, etc."); *see also, id.* at p. 13 ("Since arriving at Niagara County Jail I have been inhaling large quantities of dirt and dust. On the vents particularly in the pods there are large build ups of dirt and dust.

as I have witnesses this as have others. . . . [I request] to be f[e]d adequate food, that isn't spoiled, moldy, or have hair or other contaminates in it." ECF No. 1 at p. 32. Jail Lieutenant Kobrin denied the grievance, stating that Plaintiff's statements about the condition of the food at the jail was "false." *Id.* In the second grievance, Plaintiff wrote: "For the vents in pods to be cleaned of mold, dirt and dust. I have been in custody of Niagara County Jail since March with numerous verbal complaints to various staff to no avail. . . . [I request that the jail] clean vents, maintain a clean ventilation system for future inmates." ECF No. 1 at p. 34. Lieutenant Kobrin responded, "The air ducts do have a build up of dust on the outside which occasionally needs to be cleaned. There is no record of mold. Regular cleaning of the air ducts will continue in order to maintain a clean facility. Grievance accepted." *Id.* There is no indication that Plaintiff appealed either grievance. Nor is there any indication that Plaintiff filed any grievance concerning unsanitary conditions in the kitchen or unsanitary conditions in Pod 4 from dog urine and feces.

Plaintiff's third claim purports to state a *Monell* free-exercise-of-religion claim against Niagara County based on an alleged policy of requiring inmates to choose between attending religious services and attending recreation. The Complaint asserts that such situation existed pursuant to county policy, since it persisted after he complained about it. In particular, he alleges the following:

> I have been forced to pick between attending religious services "Jummaah Prayer" and rec. I wrote a grievances [sic] that was answered by a captain that told me I can get an hour of rec every day and attend religious services.[6]

[6] Attached to the Complaint is Grievance 24-402 in which Plaintiff wrote: "I did not get my 1 hour of rec on Friday May 31, 2024. I attended Jummah prayer and was unable to get my recreation time. It has continued to be a issue." ECF No. 1 at p. 38. Corrections Captain Wilt responded to the grievance, stating: "You are entitled to 1 hour of recreation. If for some reason like religious service is going on at

> When I showed CO Fortino this he told me I had to pick between rec and religious services. That there was nothing he could do. Even though I am in the box I decided to go to religious services. When I got back CO Fortino said I could go out for 10 minutes [of recreation] so I did.

ECF No. 1 at p 19.

In lieu of answering the Complaint Defendants filed the subject motion to dismiss the Complaint. As summarized in Defendants' papers, their arguments in support of the motion are as follows:

> The complaint should be dismissed in its entirety because Plaintiff failed to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PRLA").
>
> ***
>
> Plaintiff's Fourteenth Amendment conditions of confinement claims against Defendants [Angelo] Nunnari and [Sherry] Prohaska should be dismissed because Plaintiff failed to allege that he suffered any adverse health effects due to eating the food provided by the County Defendants; and that Defendants Nunnari and Prohaska acted with deliberate indifference to conditions which present an immediate danger to Plaintiff's health and well-being.
>
> ***
>
> Plaintiff's Fourteenth Amendment conditions of confinement claims against Niagara County should be dismissed because Plaintiff has failed to allege that any official policy, practice or custom of Niagara County caused the allegedly unconstitutional conditions as required to establish municipal liability under *Monell*. Further, Plaintiff has failed to allege that the conditions of confinement were sufficiently serious to constitute a constitutional violation.
>
> ***
>
> Plaintiff's First Amendment free exercise claims against Niagara County should be dismissed because Plaintiff has again failed to allege that his constitutional rights were denied due to official policy, practice or custom of Niagara County. Additionally, Plaintiff admitted that he was not prevented from attending religious services, Plaintiff has filed no subsequent

---

the same time your recreation hour is offered, please let your housing using officer know that you still wish to attend recreation. Grievance accepted." *Id.*

> grievances indicating that his recreation time was infringed upon more than once, and Plaintiff has failed to allege that one occasion of limited recreation time was sufficiently serious to support a constitutional claim.
>
> ***
>
> Plaintiff's claims against the Defendants Nunnari and Prohaska should also be dismissed because they are entitled to qualified immunity, and Plaintiff has not alleged sufficient facts which make it plausible that the affirmative defense of qualified immunity does not apply.

ECF No. 18-1 at pp. 5-6.

Plaintiff did not respond to Defendants' motion, and the time for doing so has long passed.[7]

DISCUSSION

Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se.* Accordingly, the Court has construed his Complaint liberally, "to raise the strongest arguments that [it] suggest[s]." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Exhaustion of Administrative Remedies

Defendants maintain, first, that the entire Complaint should be dismissed for failure to exhaust administrative remedies. The applicable legal principles are well settled. Namely, with certain exceptions that do not appear to apply here,[8]

---

[7] Defendants filed and served the motion on October 30, 2025. Pursuant to Rule 7(b)(2)(B) of the Local Rules of Civil Procedure, Plaintiff was required to file and serve any response within fourteen days after service.

[8] The Complaint gives no indication that the Jail's grievance procedure was unavailable to Plaintiff. Rather, it contends that Plaintiff used the grievance process to exhaust his claims. Plaintiff baldly asserts that officials "ignored" *all* his grievances, but his own exhibits refute that statement and show that jail officials indeed responded to his grievances. *See, e.g.*, ECF No. 1 at p. 12 ("I also sent Lt. Korbin a grievance (24-895) asking about the kitchen staff to stop serving moldy food. He denied my claims."); *see also id.* at p. 19 ("I wrote a grievance that was answered by a Captain[.]"). Consequently, the assertion that jail officials literally ignored Plaintiff's grievances is not plausible. Rather, Plaintiff

> [t]he [Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)] [(“]PLRA[“] provides that “[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner ... until such administrative remedies as are available are exhausted.” 42 U.S.C. § 1997e(a). Exhaustion is “mandatory,” *Ross v. Blake*, 578 U.S. 632, 639 (2016), and is required “regardless of the relief offered through administrative procedures,” *Booth v. Churner*, 532 U.S. 731, 741 (2001).

*Edwards v. Destefano*, No. 23-7515, 2025 WL 1068317, at *1 (2d Cir. Apr. 9, 2025).

Inmates and pretrial detainees are required to properly exhaust available administrative remedies *before* asserting a federal claim in federal court complaining about jail or prison conditions. *See*, 42 U.S.C.A. § 1997e(a) (“No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.”).

To satisfy the exhaustion requirement, the inmate's grievances must provide prison officials with sufficient information to allow them to correct the situations about which the plaintiff is complaining in his lawsuit:

> ‘The primary purpose of a grievance is to alert prison officials to a problem....’ *Thomas v. Waugh*, No. 9:13-CV-321, 2018 WL 1508563, *5 (N.D.N.Y. Mar, 27, 2018) (quoting *Jones v. Bock*, 549 U.S. 199, 219, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). At minimum, an inmate's grievance must “provide prison officials with notice of the misconduct from which he seeks redress so that the prison may take appropriate responsive measures.” *Reynolds v. Stone*, No. 9:20-CV-686, 2021 WL 3271805, *10 (N.D.N.Y. May 24, 2021), *R. & R. adopted*, 2021 WL 3269053 (N.D.N.Y. July 30, 2021) (citing *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

---

evidently means that jail officials “ignored” his grievances in the sense that they allegedly failed to take action to correct the situations about which he was complaining.

*Witherspoon v. Jones*, No. 9:24-CV-296 (MAD/DJS), 2026 WL 1396585, at *3 (N.D.N.Y. May 19, 2026); *see also, Burrell v. Rushford*, No. 25-785, 2026 WL 2168298, at *1 (2d Cir. July 28, 2026) ("Although an inmate need not articulate a claim in an administrative grievance in the exact same manner that he articulates it in federal court, inmates "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)."); *see also, Burrell v. Rushford*, 2026 WL 2168298 at *2 ("[T]o meet the exhaustion requirement of the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.") (citations and internal quotation marks omitted).

If administrative remedies were "available" to the inmate plaintiff, then he must have "properly" exhausted his remedies:

> Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378 (2006), internal quotation marks omitted).

Since Plaintiff was an inmate at the Niagara County Jail at all relevant times, he was required to exhaust his claims using the procedures established by New York law for county jails, which are as follows:

> "[G]rievance procedures at county-level correctional facilities in New York" are governed by 9 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 7032, *et seq. Vega v. Broome County*, No. 21-CV-788, 2023 WL 6318919, at *17 (N.D.N.Y. Sept. 28, 2023)[.]

***

> Section 7032 provides that "the chief administrative officer of each local correctional facility shall establish, implement and maintain a formal inmate grievance program," 9 N.Y.C.R.R. § 7032.1, which "shall include," among other things, "a detailed description of grievance program operations including steps, timeliness, investigative processes and available internal and external appeal procedures[,]" *id.* § 7032.3(b)(1). Under any facility's program pursuant to § 7032, an inmate must "file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Id.* § 7032.4(d). The chief administrative officer of the facility must also designate a staff member to act as a grievance coordinator, *id.* § 7032.4(e), and the regulations provide that the chief administrative officer or designee shall "ensure that each grievance is investigated to the fullest extent necessary by an impartial person who was not personally involved in the circumstances giving rise to the grievance," *id.* § 7032.4(f). Within five business days of receipt, the "grievance coordinator shall issue a written determination." *Id.* § 7032.4(i). The inmate has two business days after receipt of the grievance coordinator's determination to appeal to the chief administrative officer or their designee, *id.* § 7032.4(j), after which the chief administrative officer or their designee has five business days to issue a determination, id. § 7032.4(k). For "any grievance denied by the facility administrator," the inmate has three business days to indicate to the grievance coordinator that he seeks to appeal to the State Commission of Correction, and the grievance coordinator then has three business days to submit the appeal to the Commission's Citizens' Policy and Complaint Review Council ("CPCRC"). *Id.* § 7032.5(a)–(b). Thereafter, the CPCRC "shall issue a written determination to the appeal within 45 business days of receipt." *Id.* § 7032.5(d)(1).

*Stratton v Officer Narcise*, No. 23-CV-2152 (KMK), 2023 WL 8436046, at *5 (S.D.N.Y. Dec. 5, 2023) (additional citations omitted).

Compliance with § 1997e(a) is neither a jurisdictional requirement nor a pleading requirement. Rather, failure to comply with § 1997e(a) is an affirmative defense. *See, Rucker v. Giffen*, No. 20-1318, 2021 WL 1803655 (2d Cir. May 6, 2021) ("[A] prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure

to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.") (internal quotation marks omitted). As such, dismissal of a complaint under Rule 12(b)(6) based on failure to comply with § 1997e(a) is appropriate only if the *failure to exhaust* is obvious from the face of the complaint. *See, e.g., Griffin v. City of New York*, No. 22-CV-8521 (AS), 2025 WL 2198715, at *3 (S.D.N.Y. Aug. 1, 2025) ("Inmates are not required to specially plead or demonstrate exhaustion in their complaints, and a court may dismiss a complaint for failure to exhaust only if it is clear on the face of the complaint that the plaintiff *did not* satisfy the PLRA exhaustion requirement.") (emphasis added; citations and internal quotation marks omitted).

On the other hand, dismissal under § 1997e(a) is not appropriate where it is unclear from the face of the complaint whether the plaintiff exhausted his administrative remedies, such as where the plaintiff completely fails to discuss exhaustion or to provide any evidence of such. *See, e.g., Brown v. Laino*, No. 24-CV-06677 (PMH), 2025 WL 3228035, at *7 (S.D.N.Y. Nov. 19, 2025) ("Compliance with the PLRA is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust his available administrative remedies. Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints. Such clarity does not exist here, as the face of the Complaint contains no clear references to Plaintiff's efforts or lack of efforts to exhaust administrative remedies.") (citations and internal quotation marks omitted).

In the instant case Defendants maintain that the Complaint should be dismissed in its entirety, since it fails to affirmatively allege or demonstrate that Plaintiff exhausted

the administrative remedies available at the Niagara County Jail as to each claim in the Complaint. Defendants assert, for example, that dismissal is necessary since "it is not apparent from the face of the complaint that Plaintiff even filed an initial grievance" as to certain claims, ECF No. 18-2 at p. 10, and since it does not appear that Plaintiff appealed any of his grievances, *id.* at p. 9 ("Plaintiff has failed to plead that he exhausted the available remedies[.]"); ("Plaintiff, however, failed to attach any documents demonstrating that he appealed[.]").

Defendants essentially assert that it is evident from the face of the Complaint that Plaintiff did not exhaust his administrative remedies, since the Complaint does not demonstrate that he did so. However, as is clear from the legal standards set forth above, a prisoner's Section 1983 complaint is not required to plead or demonstrate exhaustion. Consequently, Defendants' motion is denied insofar as it seeks dismissal of the entire complaint based on Plaintiff's failure to plead and demonstrate that he fully exhausted his administrative remedies before filing this action.

Defendants may eventually be able to demonstrate that Plaintiff's grievances were substantively deficient since they failed to properly give Defendants' notice of all claims being raised in this action, and/or that Plaintiff failed to properly exhaust his claims using the procedures discussed above. However, since neither of those situations is clear from the face of the Complaint,[9] Defendants' motion to dismiss is denied insofar as it is based on § 1997e(a), without prejudice to Defendants raising the issue again at the summary judgment stage.

---

[9] This is primarily since it is unclear whether the attachments to the Complaint represent all relevant documentation concerning exhaustion.

Motion Under Fed. R. Civ. P. 12(b)(6)

Defendants alternatively seek dismissal under Rule 12(b)(6). The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [("*Iqbal*")].

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining

> whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (citation omitted).

When deciding a Rule 12(b)(6) motion, the Court may not rely on matters outside of the complaint. Fed.R.Civ.P. 12(d). Nevertheless, "a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ..., [and] if a complaint relies heavily upon [a document's] terms and effect, that document is rendered 'integral' to the complaint and may be considered on a motion to dismiss." *Safran Elecs. & Def. SAS v. iXblue SAS*, 789 F. App'x 266, 270 (2d Cir. 2019) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)) (internal quotation marks omitted).

Finally, where, as here, a plaintiff fails to respond to a Rule 12(b)(6) motion, the Court cannot merely grant the application as unopposed. Rather, the Court must nevertheless evaluate the legal sufficiency of the Complaint. *See, e.g., Barrios v. Bello*, No. 20 CIV. 5228 (JPC), 2021 WL 1630594, at *4 (S.D.N.Y. Apr. 27, 2021)("The Court must still decide an unopposed motion to dismiss pursuant to Rule 12(b)(6) on its merits. *See McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).") (other citation omitted).[10]

<u>Section 1983</u>

---

[10] Such evaluation of the legal sufficiency of the pleading is a separate matter from whether Plaintiff's claims were properly exhausted as required by § 1997e(a).

The Complaint purports to state claims against Angelo, Sherry, and Niagara County for constitutional violations under Section 1983. To state a claim under Section 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, at the pleading stage, a plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions[] . . . violated the Constitution." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

The requirements for establishing liability against a municipality under Section 1983 are different, namely, a local government may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "To hold a municipality liable in [a § 1983] action, 'a plaintiff is required to plead and prove three elements: (1) an

official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quotation and citations omitted).

Claims Against Angelo and Sherry

The conditions of confinement claims against Angelo and Sherry involve two types of alleged conduct: First, serving moldy and/or spoiled food to jail inmates; and, second, failing to enforce "health practices" in the kitchen involving hair nets, hand washing, food storage, etc.[11]

As noted earlier, at different times during his confinement at the jail Plaintiff was both a pretrial detainee and a convicted prisoner. Conditions of confinement claims by convicted prisoners are analyzed under the Eighth Amendment. *Jeanty*, 379 F. Supp. 2d at 539 (holding that Eighth Amendment scrutiny is appropriate once the "State has complied with the constitutional guarantees traditionally associated with criminal prosecutions" and "has secured a formal adjudication of guilt")). Conditions of confinement claims by pretrial detainees are analyzed under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment.").

Both standards include an objective component that considers the nature of the dangers created by the conditions alleged. *Darnell*, 849 F.3d at 30 (citing *Kingsley v.*

[11] While both types of claim involve the quality of the jail's food, the Complaint expressly treats them as separate claims. *See, e.g.*, ECF No. 1 at p. 24, Claims 4 & 5.

*Hendrickson,* 576 U.S. 389, 398 (2015)). The allegations supporting this component must "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health." *Id.* (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). An example of this would be a deprivation of "basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125.

There is also a subjective component that addresses whether a defendant possessed the requisite state of mind. Allegations supporting the subjective, or state of mind component of a Fourteenth Amendment claim must show "that the defendant-official acted *intentionally* to impose the alleged condition, or *recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35 (emphasis added). For an Eighth Amendment claim, the subjective showing required is deliberate indifference: "[A]n official 'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Darnell*, 849 F.3d at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

Here, the Complaint alleges that Angelo and Sherry intermittently served Plaintiff spoiled, moldy, and contaminated food at the jail, and that they did so intentionally out of expediency. *See, e.g.*, Complaint, ECF No. 1 at p. 10 (Asserting that Angelo "has served

moldy, weeks old, spoiled food numerous times."); *see also, id.* at p. 11 (Asserting that Sherry "has knowingly served moldy food to Niagara County inmates."); *id.* at p. 17 ("[Workers told Sherry] that the macaroni salad smelled and it's bad. Sherry said that it's fine[,] to 'just serve it.' . . . It's only 5 days old, it's fine."); *id.* ("[We ran out of food for dietary trays so Sherry went and got 2 week old burgers to serve people with special diets."); *id.* at p. 20 ("John Green and Jason Hoyt are cooks at the Niagara County Jail (inmate cooks) and they both have told me that Sherry and Angelo force them to cook bad food. Specifically, there is a stew that they make to add all the spoiled food in.").

The Court finds that such allegations are sufficient to state a plausible conditions of confinement claim against Angelo and Sherry under the Eighth and Fourteenth Amendments. In this regard, and contrary to what Defendants assert, it is not necessary for Plaintiff to allege that he actually suffered a specific injury from having ingested contaminated food:

> "[T]here is no 'static' definition of a deprivation" or any "bright-line durational or severity limits in conditions of confinement cases." *Darnell*, 849 F.3d at 31. "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* at 30 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). Nor must a plaintiff plead that he actually suffered a serious injury; the defendant is not entitled to a free pass until the risk of serious damage to the detainee's health materializes into actual grave damage. *See Darnell*, 849 F.3d at 31 (noting that the court "has never imposed a requirement that pretrial detainees show that they actually suffered from serious injuries"). Nonetheless, "courts impose a high bar to success on a conditions of confinement claim based on a theory that the food provided in a prison or jail was inadequate." *Rombousek v. Trinity Co.*, 2022 WL 2343236, at *4 (S.D.N.Y. June 29, 2022). "Allegations that the food served is 'unpleasant' do not state a constitutional claim." *Monroe v. Cnty. of Rockland*, 2022 WL 2441118, at *2 (S.D.N.Y. July 5, 2022). Repeated instances of spoiled food are sufficient to state a claim. *See, e.g., Lunney v. Brureton*, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005) (holding that a plaintiff's allegations that his meals were "regularly spoiled"

> on "numerous occasions" were "sufficient to state an Eighth Amendment claim").

*Atadzhanov v. City of New York*, No. 21-CV-5098 (LJL), 2022 WL 4331304, at *5 (S.D.N.Y. Sept. 19, 2022). Here, the Complaint alleges "repeated instances" of Plaintiff receiving spoiled and/or contaminated food.[12]

The Court also finds that the Complaint states a plausible conditions of confinement claim against Angelo and Sherry based them allegedly allowing unsanitary conditions to exist in the jail kitchen regarding food handling and storage. In this regard, regarding the objective prong, "[g]enerally, a simple health code violation does not offend the constitution." *Butler v. Suffolk Cnty.*, No. 11-CV-2602(JS)(ST), 2023 WL 5096218, at *41 (E.D.N.Y. Aug. 9, 2023) (quoting *Capps v. Atiyeh*, 559 F. Supp. 894, 914 (D.C. Or. 1983)). However, the objective element of an Eighth Amendment or Fourteenth Amendment claim may be satisfied by unsanitary kitchen conditions that are sufficiently serious:

> Dining-related Eighth Amendment claims should be addressed to the quantity or quality of essential food. *Walker v. Johnson*, 544 F.Supp. 345, 359 (E.D.Mich.1982), citing *Rhodes v. Chapman*, 452 U.S. at 348, 101 S.Ct. at 2400. Although plaintiffs here challenge the sanitation of the food service facility, they do not claim a basic deprivation of food. *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980), sets forth the constitutional minimum as to prison food: "[The state must provide] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Id.* at 570–71. Serious sanitation problems in food service and preparation areas could certainly rise to the level of an Eighth Amendment violation under this standard. *See Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983); *Grubbs v. Bradley*, 552 F.Supp. 1052, 1123 (M.D.Tenn.1982).

[12] Defendants maintain that the Complaint indicates that Plaintiff received spoiled food on only one occasion, *see*, ECF No. 18-2 at pp. 12-13, but the Court disagrees.

*Miles v. Bell*, 621 F. Supp. 51, 62–63 (D. Conn. 1985); *see also, Robles v. Coughlin*, 725 F.2d at 16 (citing cases for the proposition that allegations of “unsanitary food utensils, including cigarette burns and hair on food trays” or “spoiled, rotted and foul food served in uncleaned wagons used to dispose of garbage” are “sufficient to withstand dismissal of a Section 1983 complaint.”); *Pineda v. Dutchess Cnty.*, No. 25-CV-4554 (JGLC), 2026 WL 867179, at *6 (S.D.N.Y. Mar. 30, 2026) (“The Constitution “require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates.” *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (cleaned up). So when food does present such a danger—either because it cannot be safely consumed or because prison officials have withheld it—courts in this Circuit have allowed plaintiffs' claims to proceed.”) (collecting cases).

Here, at the pleading stage, the Court declines to say as a matter of law that the kitchen conditions described in the Complaint fail to objectively state a claim of constitutional magnitude. Additionally, regarding the subjective element, the Complaint's allegations that Angelo and Sherry used their positions to “punish” inmates who complained about unsanitary conditions in the kitchen plausibly suggest the state of mind element required a claim under the Eighth Amendment or Fourteenth Amendment.

The Court also declines Defendants' cursory request to find as a matter of law, from the face of the Complaint, that either Angelo or Sherry is entitled to qualified immunity, ECF No. 18-2 at pp. 27-28.[13] *See, Horn v. Stephenson*, 11 F.4th 163, 169–70

---

[13] *See, e.g., Vega v. Miller*, 273 F.3d 460, 466 (2d Cir. 2001) (“Government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The qualified immunity defense

(2d Cir. 2021) ("While qualified immunity may be "successfully asserted" on a motion to dismiss the complaint, the defense "faces a formidable hurdle" at the pleading stage. We may review a denial of a motion to dismiss on the basis of immunity only to the extent that the denial turned on questions of law. The defendant must therefore show not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Moreover, the plaintiff is entitled to all reasonable inferences from the facts alleged, including those that defeat the immunity defense.") (footnotes and internal quotation marks omitted); *see also, Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) ("With the benefit of those inferences, we then ask whether the plaintiff has pled "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017) (internal quotation marks omitted)."). Defendants' undeveloped argument does not meet this standard.

Consequently, Defendants' Rule 12(b)(6) motion is denied as to the claims against Angelo and Sherry.

*Monell* Claims Against Niagara County

Defendants also maintain that the *Monell* claims must be dismissed, since the Complaint does not plausibly plead either that Plaintiff suffered a constitutional violation, or that any such violation was the result of a Niagara County policy, practice or custom.

---

requires consideration of the clarity of the law establishing the right allegedly violated and whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that the applicable law was being violated. These inquiries combine to form a standard that the Supreme Court has called "objective legal reasonableness," that is, whether it was objectively reasonable for a defendant to think that the challenged conduct did not violate the plaintiff's clearly established rights.") (citations and internal quotation marks omitted).

In this regard, as discussed earlier, the Complaint purports to state the following claims against Niagara County: 1) conditions of confinement claim based on the jail serving moldy and/or spoiled food; 2) conditions of confinement claim based on unsanitary conditions in the jail kitchen; 3) conditions of confinement claim based on dirty air vents in the jail's living quarters; 4) conditions of confinement claim based on dog urine and feces in Pod 4; and 5) freedom of religion claim based on jail staff requiring inmates to choose between prayer services and recreation.

As mentioned earlier, a municipality may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom.

> A plaintiff may show "an official policy or custom" in one of four ways by "alleg[ing] the existence of":
>
> > (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.
>
> *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). "Plaintiff cannot merely allege the existence of a municipal policy or custom but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Torres v. Aramark Food*, No. 14-CV-7498 (KMK), 2015 WL 9077472, at *11 (S.D.N.Y. Dec. 16, 2015) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).

*Marozzi v. Catlin*, No. 24-CV-6489 EAW CDH, 2026 WL 63114, at *8–9 (W.D.N.Y. Jan. 8, 2026).

Here, Plaintiff's Complaint does not expressly allege that any of the alleged constitutional violations occurred due to a policy, practice, or custom of Niagara County. Rather, it appears that when Plaintiff drafted the pleading, he incorrectly assumed that Niagara County would be liable for the alleged constitutional violations on the theory of *respondeat superior. See, e.g.*, Complaint, ECF No. 1 at p. 6 ("The County of Niagara is liable because all of the health violations that have occurred [sic] while I have been in custody of Niagara County Jail. . . . All individuals besides the State of New York and the New York State Department of Health are employed by Niagara County and work at Niagara County Jail."); *see also, id.* at p. 8 ("C.O. Savino is a C.O. who works at Niagara County Jail, who is employed by Niagara County.").

Nevertheless, since Plaintiff is proceeding *pro se*, the Court has liberally construed his pleading to see whether it contains sufficient factual allegations to support *Monell* claims against Niagara County under any one of the four theories set forth above. However, even assuming *arguendo* that the matters about which Plaintiff complains in his causes of action against Niagara County, involving dirty air vents, dog feces and urine, and conflicts between prayer services and recreation, are of constitutional magnitude,[14] the Complaint fails to plausibly plead any basis for municipal liability as to any of his claims.

To begin with, even liberally construed, the pleading does not plausibly suggest the existence of any relevant "formal policies officially endorsed by the municipality."

---

[14] The Court has already indicated that the claims concerning spoiled food and unsanitary kitchen conditions are plausibly stated as being of constitutional magnitude.

Neither do the facts alleged plausibly suggest that the alleged constitutional violations were the result of "actions or decisions made by municipal officials with decision-making authority." On this point, the fact that Angelo, Sherry, C.O. Savino (who allegedly told Plaintiff that he had to choose between prayer services and recreation), and Lieutenant Kobrin (who denied Plaintiff's grievances) were employed by Niagara County does not imply they had final decision-making authority for the County, nor is there any indication that any final policymaking authority for Niagara County ordered, ratified, or was aware of their allegedly unconstitutional actions. *See, e.g., Marozzi v. Catlin*, 2026 WL 63114, at *9 ("As the Second Circuit has explained, "a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). "It is not enough that an official had discretion to make a decision that was unreviewable." *Id.* (citing *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003)). "Rather, the official must have been sufficiently 'high up in the municipal hierarchy,' that he was 'responsible under state law for making policy in that area of the municipality's business.'" *Id.* (first quoting *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992); and then quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)). "The authority to make policy 'necessarily' means 'the authority to make final policy.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)); *see also Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 454 (S.D.N.Y. 2012) (explaining that "[t]o show *Monell* municipal liability, it is not enough that there be an individual from the municipality who implemented the allegedly unconstitutional policy" but instead, "the challenged action

must have been undertaken by an authorized final policymaker" (internal quotation marks omitted)); *Lopez v. Cnty. of Suffolk*, No. 23-CV-2230-SJB-JMW, 2026 WL 2186014, at *10 (E.D.N.Y. July 29, 2026) ("Merely holding the title of supervisor or sergeant does not confer [a county jail corrections] officer with final policymaking authority.") (collecting cases).

The Complaint also does not plausibly plead *Monell* liability against Niagara County based on the existence of "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware."

> "To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must 'show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" [*Buari v, City of New York*, 530 F.Supp.3d 356, (S.D.N.Y. 2021)] (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)). "A plaintiff 'may adequately plead the existence of *de facto* customs or policies based on governmental reports documenting constitutional deficiencies or misconduct' if such reports are 'sufficiently connected to the specific facts of the case.'" *Id.* (quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) (collecting cases) and *Gomez v. City of New York*, No. 16-CV-1274, 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017)).

*Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022). The instant pleading does not allege that any Niagara County policymaker, prior to or contemporaneous with the events described in the Complaint, had notice of widespread practices at the jail involving feeding inmates spoiled food, failing to maintain a sanitary kitchen, failing to keep air vents clean, allowing unsanitary conditions to exist regarding dog feces and urine, or requiring inmates to choose between attending religious services and recreation, and ignored them. *See, Bologna v Danbury*, No. 1:26-CV-0703 (ECC/ML),

2026 WL 2836771, at *4 (N.D.N.Y. Sept. 22, 2026) ("Here, even under the most liberal pleading standards Plaintiff has not alleged conduct by any policymaker that can be attributed to the alleged violation of her constitutional rights. Likewise, Plaintiff does not point to any similar instances of constitutional violations experienced by others.") (collecting cases holding that the plaintiff cannot rely on the alleged constitutional violations in his own complaint to demonstrate a de facto municipal policy or custom); *see also, Trapani v. St. Peter's Hospital of the City of Albany*, No. 1:25-CV-01479 (GTS/PJE), 2026 WL 2676589, at *9 (N.D.N.Y. Sept. 11, 2026) ("It is not sufficient to merely plead that the isolated incidents of the present case imply the existence of a de facto policy.").

The pleading also fails to plausibly allege *Monell* liability based on a failure by Niagara County to supervise its employees at the jail.[15]

> "To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Lopes v. Westchester Cnty.*, No. 18-CV-8205, 2020 WL 1445729, at *5 (S.D.N.Y. Mar. 25, 2020) (citation omitted). Alternatively, "a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality consistently failed to discipline those involved." *Tieman*, 2015 WL 1379652 at *21. To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious," which may be established "through proof of repeated complaints of civil rights violations ... if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Buari*, 530 F. Supp. 3d at 400.

---

[15] The Complaint gives no indication that Plaintiff is claiming that the alleged constitutional violations were the result of a lack of training.

*Douglas v. City of Peekskill*, No. 21-CV-10644 (KMK), 2023 WL 2632217, at *13 (S.D.N.Y. Mar. 24, 2023).

> A showing of deliberate indifference requires a plaintiff first to establish the circumstances that "give rise to a defendant supervisor's duty to act." *Reynolds* [*v. Giuliani*,], 506 F.3d [183,] 192 [(2d Cir. 2007)] (discussing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). A plaintiff "must establish also that [the] defendant breached its duty to act." *Reynolds*, 506 F.3d at 193. To meet this burden, "plaintiffs' evidence must establish only that <u>a policy making official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,'</u> ... and the policymaker's failure to investigate or rectify the situation evidence[d]" a "conscious choice rather than mere negligence." *Amnesty Am.* [*v. Town of West Hartford*,] 361 F.3d [113,] 128 [(2d Cir. 2004)].

*Shea v. Town of Brookhaven*, No. 2:21-CV-5696 (NJC) (LGD), 2026 WL 948364, at *40 (E.D.N.Y. Apr. 8, 2026) (underlined emphasis added).

> "[A]n allegation of numerous claims of [the underlying constitutional wrong] by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise." *Tieman*, 2015 WL 1379652, at *21. Rather, a plaintiff must allege that "meaningful attempts to investigate repeated claims ... are absent." *Id.* (quoting *Hart v. City of Binghamton*, No. 10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012)). In other words, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Hart*, 2012 WL 1565085, at *5.

*Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *20 (S.D.N.Y. Sept. 28, 2023).

Here, Plaintiff's Complaint "does not state facts from which it could plausibly be inferred that any [county] policymaking officials deliberately ignored an obvious need for supervision" with regard to the matters about which Plaintiff complains, *Rivera v. City of Hartford*, No. 3:25-CV-01046 (SVN), 2026 WL 1911636, at *6 (D. Conn. July 2, 2026).

Rather, to the extent that the Complaint alleges that Plaintiff and another inmate complained to jail staff by making oral complaints and filing written grievances about certain matters, it fails to suggest that any Niagara County official with policy making authority had notice of those complaints, let alone notice of a pattern of similar, prior complaints, and failed to act.

The claims against Niagara County are therefore dismissed for failure to state a plausible basis for *Monell* liability.

## CONCLUSION

Defendants' motion to dismiss (ECF No. 18) is denied as to Angelo Nunnari and Sherry Prohaska, and granted as to Niagara County. The Clerk is directed to terminate Niagara County from the action. **Defendants Nunnari and Prohaska shall file and serve an answer to the Complaint within fourteen (14) days after notice of entry of this Decision and Order, pursuant to Fed. R. Civ. P. 12(a)(4)(A)**. The Court will issue an order referring this case to a United States Magistrate Judge to oversee all non-dispositive pretrial matters. The parties may wish to request that the Magistrate Judge allow a bifurcated discovery schedule where discovery related to exhaustion takes place in the first phase, and a motion for summary judgment on the basis of exhaustion takes place at the conclusion of the first phase of discovery.

SO ORDERED.

October 26, 2026
Rochester, New York

CHARLES J. SIRAGUSA
UNITED STATES DISTRICT JUDGE